UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JANE DOE, | CASE NO. 1:22-cv-01677 |
| Plaintiff, | JUDGE DAVID A. RUIZ |
| -vs- | |
| | **MEMORANDUM OPINION AND ORDER** |
| CUYAHOGA COUNTY – OFFICE OF COUNTY EXECUTIVE, *et al.*, | |
| Defendants. | |

**Procedural Background**

Plaintiff, Jane Doe (Doe), filed a Second Amended Complaint for declaratory judgment, injunctive relief, and damages, seeking relief for alleged constitutional deprivations of the First and Fourteenth Amendments under 42 U.S.C. § 1983. She sues Defendants: the Ohio Department of Job and Family Services (ODJFS); Cuyahoga County (the County); Cuyahoga County Department of Children and Family Services (DCFS); and Cuyahoga County - Office of County Executive c/o Chris Ronayne (Ronayne).[1] (R. 23). These claims stem from the application of DCFS Regulations and the ultimate determination to place Doe's name on the Ohio Abused and Neglected Child

---

[1] Doe references Defendant Armond Budish, as an alleged employee of the County. (R. 23, PageID 2245). While Budish was named in the original Complaint as c/o of the County, (R. 1), this person is not specifically named in the caption of the Amended Complaints (R. 11, 22, 23). Nor does his name appear any place else. Similarly, there is an alleged violation of the Fifth Amendment in the case caption and under the "Jurisdiction and Venue" heading (R. 23 at 2243-44), but the Amended Complaint contains no specific Fifth Amendment claims. The Court therefore concludes these are typographical errors.

Registry (Registry). Additionally, Doe challenges the definition of "indicated" in § 5180:2-1-01(B)(161) of the Ohio Administrative Code.[2]

Pending with the Court are Motions to Dismiss filed by the County Defendants and ODJFS. The County seeks dismissal under Fed. R. Civ. P. 12(b)(6). (R. 24). ODJFS asserts dismissal is appropriate under 12(b)(6), but also moves to dismiss for lack of jurisdiction under 12(b)(1). (R. 28). The Motions have been fully briefed. (R. 33, 34, 37, 39). For the reasons that follow, the Court **GRANTS** Defendant's ODJFS Motion and **GRANTS** in part and **DENIES** in part, the County's Motion. Further, by acknowledging that her claims fail against DCFS and Ronayne, all claims as to those Defendants are dismissed with prejudice.

## Summary of Key Facts

### 1. *PCSAs and the Investigatory Process*

When an individual is alleged to have engaged in child abuse or neglect, public children services agencies (PCSA) investigate and make dispositions related to those allegations. Ohio Rev. Code § 2151.421; Ohio Admin. Code §§ 5180:2-36-01, 5180:2-36-03. These agencies include DCFS. *See Williams v. Cuyahoga Cnty.*, 776 F. Supp. 3d 653, 662 (N.D. Ohio Mar. 31, 2025) (Calabrese, J.) (citing Ohio Rev. Code § 5153.02)). Among other requirements, a PCSA representative must "inform the person [accused] of the specific complaints or allegations…" Ohio Rev. Code § 2151.421(G)(1). Once a PCSA concludes it investigation of alleged abuse or neglect, it must move to disposition, making one of four findings: substantiated, indicated, unsubstantiated, or unable to complete for various reasons. *Id.* (citing Ohio Admin. Code § 5180:2-1-01(B)(46), (274)).

---

[2] The Amended Complaint refers to sections and 5101:2-1-1 of the Ohio Administrative Code, but those sections have since been renumbered. *See* Ohio Admin. Code §§ 51010:2-1-01, 5101:2-33-20, 5180:2-1-01, 5180:2-33-20.

2

A "substantiated report" results from an admission of abuse or neglect by the accused; an adjudication of neglect; or other forms of confirmation as determined by the PCSA. *Id.* (citing Ohio Admin. Code § 5180:2-1-01(B)(316)). An "indicated report" is a finding based on circumstantial indicators of abuse or neglect, lacking confirmation; or a determination by the caseworker that the child may have been abused or neglected. *Id.* (citing Ohio Admin. Code § 5180:2-1-01(B)(161)).

When a disposition finding indicates that a report of abuse is substantiated or indicated, the alleged perpetrator is placed on the Ohio Abused and Neglected Child Registry. (R. 23, PageID 2252-53, ¶¶ 57–61). Any other state or national CPS worker has access to the Registry, as do out-of-state children services agencies for use in foster or adoption approvals. (*Id.* at ¶¶ 58–60).

The report disposition must notify an alleged perpetrator of the right to appeal. DCFS Regulation 2.03.05(I)(A). And all PCSAs must develop and implement a written policy for resolving appeals, including reasonable time frames for requesting the appeal and completing appellate review. Ohio Admin. Code §§ 5180:2-33-20(A)(2); 5180:2-33-20(B)(3).

In Cuyahoga County, an alleged perpetrator may appeal a finding of "substantiated" or "indicated" neglect or abuse. DCFS Regulation 2.03.05(II)(A). However, appeals are not permitted during the pendency of a related criminal proceeding or civil court action. Regulation 2.03.05 (III)(A)(2). If an alleged perpetrator's request for appeal is denied on this ground, s/he may resubmit an appeal when the external court matter is concluded.

If granted, a hearing panel composed of three DCFS social workers hears the appeal and decides whether to uphold, alter, or reverse the disposition. (R. 23, PageID 2255, 2270, ¶¶ 83, 188). *See also*, DCFS Regulation 2.03.05. The hearing panel does not give preclusive effect to judicial determinations of credibility or merits. (*Id.* at 2256, 2262–63, ¶¶ 84–85, 132). The hearing panel's decision is final and cannot be further appealed. (*Id.* at ¶ 86).

### 2. *The Investigation into Doe*

On May 17, 2022, DCFS opened an investigation into Doe based on a report of alleged abuse of her daughter. (*Id.* at 2246, ¶ 10). Doe was provided notice of the nature of the allegations generally, but claims she was neither provided with specifics, nor the source. (*Id.* at 2257, ¶90-1, 2263–64, ¶ 139). Furthermore, she alleges the caseworker assigned to her case did not view an existing video, documenting an interaction between Doe and her daughter, which resulted in the abuse claim, prior to making a disposition of "substantiated" abuse. (*Id.* at 2246, ¶¶ 14–17). As a result, Doe complains her name was added to the Registry, without opportunity to be heard prior to DCFS issuing its determination. (*Id.* at 2253, ¶¶ 62-63,  2264, ¶ 139).

After issuing the determination, DCFS sent Doe a "Disposition Letter," which informed her of the finding, and of her right to appeal. (R. 23-1). Doe also challenges this as the letter "did not provide any information on the internal policies or procedures for filing an appeal," despite internal policies requiring this. (R. 23, PageID 2255, ¶ 77). The letter also did not explain the grounds for finding a "substantiated" claim of abuse. (*Id.* at 2264, ¶ 142).

### 3. *Independent but Related Court Proceedings*

Around the time of the DCFS investigation, the father of Doe's child filed for a civil protection order (CPO) in the Cuyahoga County Court of Common Pleas on the child's behalf. He also initiated custody proceedings in Cuyahoga County Juvenile Court. (*Id.* at 2246-47, ¶¶ 12, 25).

During the CPO proceeding, Doe's caseworker, who found the allegations "substantiated," reviewed the video of the incident for the first time. (*Id.* at 2252, ¶ 54). She then testified that Doe's conduct "did not qualify as "Excessive Discipline," the sole identified ground[] for a finding of [s]ubstantiated [a]buse." (*Id.*) The magistrate judge assigned to the case determined that Doe's accusers were not credible and that the child's father did not prove that the incident at issue "r[o]se

4

to the level of domestic violence" under Ohio Rev. Code § 3113.31 or that he and the child were in danger. (*Id.* at 2247, 2256, 2258, ¶¶ 26, 84, 97; R. 23-5, PageID 2756).

### 4. *Doe's Appeals*

Doe first attempted to appeal the disposition before receiving a decision on the CPO matter, so the County dismissed the appeal. (R. 23, PageID 2251, ¶¶ 44–45). She attempted her second appeal upon receiving the decision, but this too was denied due to pending oral arguments in the custody matter. (*Id.*, ¶ 46). She appealed a third time after the oral arguments. (*Id.*, ¶ 48). Her request was again rejected due to a pending hearing on the Juvenile Court's docket regarding "child support" that was "unrelated to the abuse allegations. (*Id.*, ¶ 49). As her first three appeals were denied, Doe's name was listed on the Registry for five months. (*Id.* at 2253, ¶ 63).

After Doe filed this lawsuit, her fourth request for appeal was granted in November 2022. (*Id.* at 2255, ¶¶ 80–81). On appeal, she provided copies of the transcript of the CPO proceeding, the magistrate judge's findings that "no child abuse had occurred," and the video of the alleged incident to the hearing panel (*Id.* at 2255–56, ¶¶ 82, 84). One month later, the panel determined that although "abuse was not 'substantiated[,]' it was still 'indicated.'" (*Id.* at 2256, ¶ 85). Thus, Doe's name remained on the Registry. (*Id.* at 2258, ¶ 92).

### Law and Analysis

### 1. **Standard of Review**

#### a. **42 U.S.C. § 1983**

Section 1983 of Chapter 42 of the United States Code authorizes redress for violations of constitutional and statutory rights by people acting under the authority of a governmental entity. It is not alone a source of substantive rights, but rather, the method for vindicating federal rights conferred

by the U.S. Constitution and federal statutes. *Baker v. McCollan,* 443 U.S. 137 (1979). Doe raises constitutional challenges, asserting violations of the First and Fourteenth Amendments through the conduit of § 1983. It would also appear she claims that DCFS Regulation 2.03.05(III)(A)(2) violates Ohio Admin. Code § 5101:2-33-20. (R. 23, PageID 2263–66). To the extent any claims in the Amended Complaint are a direct challenge to the Ohio regulations cited therein, the Court as explained herein has no jurisdiction to hear them.

### b. Fed. R. Civ. P. 12(b)(6)

Before the Court is Doe's fourth effort at crafting a Complaint (R. 1, 11, 22, 23) that comports with the *Iqbal/Twombly* Doctrine. As the Supreme Court made clear in these decisions, "to survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient fact[s], accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court faced with a Rule 12(b)(6) motion "must consider the complaint in its entirety," construing all factual allegations in a light most favorable to the plaintiff. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (*per curiam*); *accord Streater v. Cox*, 336 F. App'x 470, 474 (6th Cir. 2009). Consequently, a claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* at 678. This "plausibility standard is not akin to a 'probability requirement,'" but it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### c. Fed. R. Civ. P. 12(b)(1)

By including an argument for dismissal under R. 12(b)(1), ODJFS also challenges the Court's subject-matter jurisdiction. Unlike state trial courts, district courts do not have general jurisdiction to

6

review all questions of law. *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008) (*per curiam*). Instead, federal courts have only the authority to decide cases that the U.S. Constitution and Congress have empowered them to resolve. *Id.* Consequently, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citation omitted).

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *United States v. Richie*, 15 F.3d 592, 598 (6th Cir. 1994). Facial attacks challenge jurisdiction based on the four corners of a complaint. *See In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 884-85 (N.D. Ohio 2010) (Lioi, J.) (citing *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994). While factual attacks use extrinsic evidence to support dismissal. *Id.* at 885 (citing *Ohio Hosp. Ass'n v. Shalala*, 978 F. Supp. 735, 739 (N.D. Ohio. 1997) (O'Malley, J.)).

In both instances, Doe bears the burden of proving the Court has subject-matter jurisdiction. *Madison-Hughes v. Shalala,* 80 F.3d 1121, 1130 (6th Cir. 1996). As the Court finds it has subject-matter jurisdiction over Doe's claims under the First and Fourteenth Amendments, which present questions of federal law (R. 23, PageID 2244), the Court finds it has jurisdiction over the case. Consequently, the Court will address both Motions under R. 12(b)(6).

   2. ***ODJFS has Immunity under the Eleventh Amendment***

First, to state a viable claim under 42 U.S.C. § 1983, the defendant must qualify as a "person." *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 62-64 (1989). ODJFS argues as a state agency, it is not a "person" for the purposes of § 1983 and therefore cannot be sued under that statute. (R. 28, PageID 2825). The Court concurs. States and their agencies, like ODJFS, do not qualify as "persons" under § 1983. *Will* at 71; *see also Sefa v. Kentucky*, 510 F. App'x 435, 437 (6th

7

Cir. 2013).

Additionally, "[t]he Eleventh Amendment 'bars all suits, whether for injunctive, declaratory[,] or monetary relief, against the state and its departments." *Sefa* at 437 (quoting *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993)). Unless the state has waived immunity or consented to suit, or Congress has expressly abrogated immunity, a § 1983 case against a state will not lie. *Foster v. Michigan*, 573 F. App'x 377, 391 (6th Cir. 2014) (citing *Will v. Mich. Dep't of State Police*, 491 US at 67)). Here, the state has neither waived immunity nor consented to suit, and Congress has not abrogated Ohio's sovereign immunity. *Id.*, *see also Sefa* at 437. Therefore all claims against ODJFS will be dismissed.

3. **First Amendment Claims**

Doe asserts that the definition of "indicated" as found in Regulation 2.03.05(III)(A)(2) and the Ohio Administrative Code violates her right to associate freely with her children because this definition is unconstitutionally overbroad—both facially and as applied—and is also void for vagueness under both the First and Fourteenth Amendments. (R. 23, PageID 2260-63, 2267-69, ¶¶ 111–35, 161–82).

As the Supreme Court has held, "the overbreadth doctrine applies only to First Amendment claims, not Fourteenth Amendment" claims. *United States v. Brown,* No. 3:16-CR-038, 2020 WL 4281930, at *3 (S.D. Ohio July 27, 2020) (citing *United States v. Salerno,* 481 U.S. 739, 745 (1987)). The same is true of facial vagueness claims. *United States v. Mazurie*, 419 U.S. 544, 550 (1975) (citing *Nat'l Dairy Prods. Corp.*, 372 U.S. 29 (1963)). Consequently, the Court rejects any such claims as violative of the Fourteenth Amendment.

Turning to these claims under the First Amendment, parent-child relationships are considered intimate associations. *Hartwell v. Houghton Lake Cnty. Schs.*, 755 F. App'x 474, 477-78 (6th Cir.

8

2018).³ Consequently, in essence, Doe argues the First Amendment protects intimate association. (R. 33, PageID 2869-71). However, the County correctly argues they are not cognizable because the First Amendment protects only expressive association. (R. 24-1, PageID 2769-70). The Sixth Circuit has held that although the First Amendment protects the right to expressive association, "the right to intimate association falls under the Fourteenth Amendment." *Hartwell* at 477-78.

Counsel for Doe argues that *Hartwell* is inapposite because it concerned an intimate relationship between the plaintiff and her husband and stepchildren; whereas this case concerns the intimate relationship between a parent and child. (R. 33, PageID 2870–71). Though true, *Hartwell*'s conclusion that "intimate association falls under the Fourteenth Amendment," is not confined to certain relations but not others. *See Id.* at 477–78. Rather, *Hartwell* definitively "shed light on which" constitutional provision, the First or Fourteenth Amendment, "protects the right to intimate association" in general. *Id.* at 477 (compiling intimate association cases involving marital relationships, non-marital romantic relationships, and personal friendships).

Consequently, Doe does not properly allege a First Amendment claim against the County.

4. ***Fourteenth Amendment Substantive Due Process Claims***

Doe brings multiple claims against the County regarding the Ohio Administrative Code's

---

³ The Court notes that the Sixth Circuit later quoted a 2011 case for the proposition that the "Supreme Court recognized the First Amendment right to freedom of association in intimate human relationships." *Medlin v. City of Algood*, 814 F. App'x 7, 18 (6th Cir. 2020) (quoting *Gaspers v. Ohio Dep't of Youth Servs.*, 648 F.3d 400, 414 (6th Cir. 2011)). However, the *Gaspers* Court, relied on *Roberts v. U.S. Jaycees*, where the Supreme Court established a right to intimate association as a liberty interest. *Gaspers*, 648 F.3d at 414 (quoting *Roberts,* 468 U.S. 609, 617–18 (1984)). And as the *Hartwell* Court explained, *Roberts* "left unclear which provision of the Constitution protected" the right to intimate association, leading to a multitude of cases examining that very issue. *Hartwell*, 755 F. App'x at 477 (citing *Roberts*, 468 U.S. 609). Thus, the Sixth Circuit set out to definitively "shed light on which provision … protects the right to intimate association." *Id.* And as the Sixth Circuit elucidated, "*Roberts* "reasoning [] animates substantive due process analysis." *Id.* (citing *Roberts*, 468 U.S. 609). Therefore, held the *Hartwell* Court, the right to intimate association properly falls under the Fourteenth Amendment. *See id.* at 478 (citing *Roberts*, 468 U.S. 609).

9

definition of "indicated," in 5180:2-1-01(B)(161). (R. 23, PageID 2267–72, ¶¶ 161–200). Doe first alleges the definition is void for vagueness as applied because it is "so broad and indeterminate … as to be subject[ive]" and "impermissibly lacking in specifics and standards of evidence necessary to pass constitutional muster." (*Id.* at 2267-69, ¶¶ 161–82). Therefore she claims, application of Regulation 2.03.05(III)(A)(2) violated her Fourteenth Amendment rights. (R. 23, PageID 2260-63).

First, as to Doe's claims regarding the Administrative Code's definition, the County aptly argues Doe's Second Amended Complaint fails to state a claim because the County did not draft the specific provisions of the Administrative Code and does not "have the power to create its own evidentiary standards." (*Id.* at 2772) (citing Ohio Rev. Code §§ 2151.421, 5153.166)). Doe challenges this, arguing the County adopted and enforced the rule. (*Id.* at 2874-75).

The *state* agency vested with authority to issue and enforce the administrative rules at issue is ODJFS, it is not Cuyahoga or any other County. *See* Ohio Rev. Code § 5103.0315, accord § 119.03. Doe attempts to sue the County based on a regulation promulgated not by the County's officers but by the State of Ohio and its officers. (*See* R. 23, PageID 2267–72, ¶¶ 161–200). To the extent Doe challenges application of the Ohio Administrative Code, her § 1983 claim must fail. *See e.g.*, *Cady v. Arenac County*, 574 F.3d 334 (6th Cir. 2009); *Pusey v. City of Youngstown*, 11 F.3d 652 (6th Cir. 1993); *Los Angeles County v. Humphries*, 562 U.S. 29, 32-36 (2010) (holding a municipality could be held liable under § 1983 only for its own violations of federal law).

Additionally, despite Doe's assertions to the contrary, (R. 23 at 2873), as the County also correctly notes, (R. 28, PageID 2771-72), the "void-for-vagueness doctrine is principally employed in the interpretation and application of criminal statutes … [and ]… legislation imposing civil sanctions." *Courser v. Mich. House of Representatives*, 404 F. Supp. 3d 1125, 1141 n.6 (W.D. Mich. 2019) (alterations in original) (quoting *Boutelier v. INS*, 363 F.2d 488, 495 (2d Cir. 1966)). Neither

10

of which is applicable here. The DCFS Regulation at issue, 2.03.05(III)(A)(2), governs the timing of grants of requests to appeal report dispositions in child abuse cases. It "does not impose criminal liability, does not have a civil penalty provision, and does not regulate speech in any manner." *Courser*, 404 F. Supp. 3d at 1141 n.6. Therefore, the void-for-vagueness doctrine does not apply, and this claim will be dismissed. *Id.*

To conclude, in order to survive the County's Motion, Doe's overbreadth and vagueness claims would have to be cognizable, which as outlined above, they are not. Because of this, coupled with the fact her First Amendment intimate association claim fails,[4] Doe fails to state a substantive due process claim.

### 5. *Fourteenth Amendment Procedural Due Process Claims*

Doe's Amended Complaint also includes procedural due process claims by first alleging that the Ohio Administrative Code's definition of "indicated" provides an impermissibly lax evidentiary standard with no judicial review available. (R. 23, PageID 2269-72, ¶¶ 183-200). And in a somewhat convoluted manner, Doe asserts that DCFS's procedures from initial investigation through appeal are broadly inadequate as they (1) fail to provide sufficiently detailed notice or an opportunity to be heard before a report disposition is issued, (2) allow for significant delay in granting appeals, (3) provide for an appellate hearing panel composed of employed caseworkers, (4) give no preclusive effect to judicial findings, and (5) render administrative appeal determinations (made by County employees) final. (*Id.* at 2255-56, 2262-65, 2270, ¶¶ 83–86, 132, 136–60, 188).

---

[4] In her Opposition to the County's Motion, Doe argues for the first time that DCFS Regulation 2.03.05(III)(A)(2) implicates the right to petition for redress of grievances. (*Compare* R. 33, PageID 2869, with R. 23). "It is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." *Marinkovic v. Hazelwood*, No. 1:20cv1485, 2022 WL 17405148, at *7 (N.D. Ohio Dec. 2, 2022) (Meehan Brennan, J.) (quoting *Gen. Elec. Co. v. S&S Sales Co.*, No. 1:11cv837, 2012 WL 2921566, at *4 (N.D. Ohio July 17, 2012) (Nugent, J.) ("Plaintiff, therefore, cannot attempt to withstand a motion to dismiss by stating new claims in h[er] opposition brief.")). *See also Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483–84 (6th Cir. 2020).

The Fourteenth Amendment provides that "[n]o state shall … deprive any person of life, liberty, or property[] without due process of law." U.S. Const. amend. XIV, § 1. Procedural due process rights flow from this provision and require that the government provide constitutionally adequate procedures before it deprives people of their life, liberty, or property interests. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). To overcome dismissal, Doe must assert facts demonstrating she has a viable claim for deprivation of a liberty or property interest without adequate process of notice and opportunity to be heard. *Nat. Res. Mgmt., LLC v. Twp. of Parma*, No. 2:24cv10675, 2025 WL 465297, at *2 (E.D. Mich. Feb. 11, 2025) (citing *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005); *See also, Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570 (1972).

### a. *Deprivation of a Protected Liberty or Property Interest*

Doe claims that because of DCFS's (assertedly flawed) procedures, resulting in her name being placed on the Registry, she "has been deprived of" her right "to seek employment without undue government interference." (R. 23, PageID 2263-66, ¶¶ 136–60). In turn, the County states this does not establish deprivation of a protected interest because the harms she alleges are conditional or speculative. (R. 24-1, PageID 2777-82).

Property interests are those interests in which "a person has already acquired benefits." *Roth*, 408 U.S. at 576. Property rights *can* exist in continued employment. *Id.* This depends, first, upon whether one is an employee of a private or public employer, because private employers, unlike the government, cannot create property interests. *See Merck v. Walmart, Inc.*, 114 F.4th 762, 782 (6th Cir. 2024). Doe does not specify whether her employer is a public entity. (R. 23). Therefore, she fails to allege facts showing that she was deprived of a property interest. *Cf. Merck*, 114 F.4th at 782.

Liberty interests encompass "the liberty to pursue one's trade, profession, or calling, but do[] not grant the right to a specific job." *Bower v. Vill. of Mount Sterling*, 44 F. App'x 670, 674–75 (6th

12

Cir. 2002) (citing *Draghi v. County of Cook*, 184 F.3d 689, 693 (7th Cir. 1999); *Parate v. Isibor*, 868 F.2d 821, 831 (6th Cir. 1989)). Nonetheless, "[w]hen the State makes it 'virtually impossible for the [individual] to find new employment in h[er] chosen field, the government has infringed upon that individual's liberty interest to pursue the occupation of h[er] choice." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 617 (7th Cir. 2002)).

Doe asserts because her name remains on the Registry, her "employment [is] in potential jeopardy." She first claims her employer instituted a new disciplinary policy that specifies "persons with a record of abuse or neglect should not be hired or retained." (R. 23 at 2259, ¶¶ 103–04). Additionally the policy provides that reports of abuse can lead to additional consequences, including removal from direct patient care, suspension, administrative leave with or without pay, and other measures. (*Id.* ¶¶ 105–06). Doe, however, does not specifically allege that she was suspended, placed on leave, terminated, or otherwise sanctioned. Rather, she alleges that her employment was "threatened" and that she may have difficulties retaining or securing alternative employment. (*See, e.g.*, *Id.* at 2259-63, ¶¶ 99–101, 133).

Though not specifically stated, it would appear Doe works in a medical profession and is subject to a licensing board. (*Id.* at 2252, ¶ 56). She additionally argues that if she moves to Tennessee (as she apparently so desires), she must apply to the Tennessee Board of Medical Examination, which requires all applicants to disclose whether they are listed on any abuse registry. (*Id.* at 2259, ¶ 99). And if she "were to attempt to obtain Tennessee licensure," she would have to disclose that she is on Ohio's Registry. (*Id.* at ¶¶ 99–100). Again, however, this claim is speculative. She does not allege that she is unable to move to Tennessee or pursue employment in a chosen field. *See Williams v. Cuyahoga Cnty, supra,* 776 F. Supp. 3d at 662.

Having said this, however, a liberty interest can encompass reputational injuries that satisfy

13

the "stigma-plus test." *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501-02 (6th Cir. 2007). This appears to be the only basis for her due process claims. (R. 33, PageID 2875-80). To allege deprivation of a liberty right under this test, a plaintiff must allege an "injury to [her] reputation (the stigma), coupled with the deprivation of some 'tangible interest' ... (the plus – *i.e.* a liberty or property interest)." *See Printup v. Director, Ohio Dep't of Job & Fam. Servs.*, 654 F. App'x 781, 785 (6th Cir. 2016) (second alteration in original) (quoting *Segal v. City of New York*, 459 F.3d 207, 209 n.1 (2d Cir. 2006)); *see also Williams*, 776 F. Supp. 3d at 666.

  This District has held, "[w]ithout question, a label of child neglect or child [] abuse carries stigma." *Williams* at 668. And as to the "plus" requirement of tangible injury, certain employers and licensing boards can search Ohio's Registry. Additionally, Doe alleges under her current employer's policies, she could be terminated for being on the Registry, (*see, e.g.*, R. 23, PageID 2252–53, 2259, ¶¶ 58–60, 65, 99–104). In fact, Doe avers her child's father attempted to have her employer discipline her and also attempted to get her licensing board to sanction her based upon the allegations in the CPO filing and the DCFS disposition. (*Id.* at 2252, ¶¶ 55–56).

  Thirdly, her listing on the Registry yielded a CPO and a custody hearing. (R. 23, PageID 2246–47, ¶¶ 12, 25). Although, as the County argues, Doe does not allege that these proceedings resulted in a change in her parental rights, (*see generally* R. 23), she does assert facts to support a claim that these proceedings threatened her ability to maintain a parent-child relationship. (*Id.* at 2246-47, 2263, ¶¶ 12, 25, 137).

  Consequently, these allegations could implicate a protected liberty interest. *See Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). Thus, Doe has alleged sufficient facts to support a stigma-plus tangible injury and therefore has sufficiently pleaded the first prong of a procedural due process claim. *See Williams* at 667-68; *Printup*, 654 F. App'x at 785.

### b. *Notice and Opportunity for Hearing*

"At its essence, due process can be summarized as 'the requirement that a person ... be given notice of the case against h[er] and [an] opportunity to meet it.'" *Shoemaker v. City of Howell*, 795 F.3d 553, 559 (6th Cir. 2015) (second alteration in original) (quoting *Mathews*, 424 U.S. at 348–49). When determining the process due, courts balance three factors: (1) the private interest affected by the official action; (2) the government's interest, including the fiscal and administrative burdens that additional or substitute procedures would entail; and (3) the risk of an erroneous deprivation of interest weighed against the probable value if any, of additional procedural safeguards. *Williams*, 776 F. Supp. 3d at 672 (citing *Mathews*, 424 U.S. at 335). Thus, due process requirements "are fluid and fact dependent." *Shoemaker*, 795 F.3d at 559 (citing *Mathews*, 424 U.S. at 334).

With respect to pre-deprivation processes, Doe argues she received only general notice of the allegations and was not given the identity of the complaining party before DCFS issued its report disposition. (R. 23, PageID 2263-64, ¶ 139). She further claims "DCFS never provided … any notice of what the status of the investigation was or when any decision would be issued" and did not "fully disclose[] the allegations made by the minor…." (*Id.* at 2257, 2264 ¶¶ 90–91, 143). Consequently, she claims, she had no opportunity to be heard before DCFS issued its report. (*Id.* at 2264, ¶ 139).

The County argues that the Court should dismiss this claim insofar as Doe challenges state regulations because the State authored and controls this. (R. 24-1, PageID 2783-84). And as noted *supra*, the Court agrees. Conversely, with respect to Regulation 2.03.05, the County misconstrues Doe's challenge to pre-deprivation regulations, which the County did promulgate. (*See* R. 23, PageID 2251, 2255-57, 2262–64, 2270, ¶¶ 44-49, 83–86, 90–91, 132, 139, 143, 188, R. 24-1, PageID 2774). Thus, Doe can allege a *Monell* claim against the County for alleged constitutional deprivations linked to DCFS Regulations. *See, e.g.*, *Sawyer v. Boone County*, No. 2:22cv71, 2024

15

WL 4860828, at *8 (E.D. Ky. Nov. 21, 2024) (citing *Jordan v. City of Detroit*, 557 F. App'x 450, 454 (6th Cir. 2014)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). And, by identifying the County's policies that allegedly cause her injury ((R. 23, PageID 2246-47, 2251-53, 2255-59, 2262–64, 2270, ¶¶ 44–49, 83–86, 90–91, 132, 139, 143, 188), she has met the minimum *Iqbal/Twombly* pleading standards, so the Court continues its analysis, applying the factors outlined in *Mathews v. Eldridge, supra.*

First, Doe has an interest, both professionally and personally, in remaining off of the Registry, which she contends, was based on false, erroneous, or unreliable determinations. *See Williams* at 667-68. This stigma contemplates a tangible harm. *Id.*

As to the second factor, the government has an interest "in protecting children." *Id.* at 672 (citing *Kottmyer v. Maas*, 436 F.3d 684, 690 (6th Cir. 2006)). This includes an interest in investigating and adjudicating allegations of abuse, and "creating databases that contain accurate and reliable information." *Id.* However, this interest is bound up with considerations of whether the County has "a significant interest" in its limited and final appeal process and "to what extent adding additional processes will interfere with the overarching interest in protecting children from abuse." *Id.* (quoting *Humphries v. County of Los Angeles,* 554 F.3d 1170, 1194 (9th Cir. 2009)). And as to the fiscal and administrative burdens of additional or substitute procedures, the Court is unable to make any such determination from the Amended Complaint. (*See generally* R. 23).

As to the third factor, Doe's allegations raise questions about the adequacy of pre- and post-deprivation processes available. As to pre-deprivation, she first alleges that she was not provided notice of the nature of the claims against her. (R. 23, PageID 2263-64, ¶¶ 139, 142). In fact, as she claims, she did not know until and "would not have known" but for the CPO hearing, that she was accused of abuse and that the conclusion of "substantiated" abuse was based on a finding of

16

"Excessive Discipline." (*Id.* at ¶¶ 139, 142). Moreover, Doe claims she was not given information about the status of the investigation or any opportunity to be heard before DCFS issued its disposition. (*Id.* at 2257, 2264, ¶¶ 90–93).

As to the post-deprivation process, citing Regulation 2.03.05(III)(A)(2), Doe first attacks the manner in which her appeals were handled. She challenges the five-month delay in appeal adjudication. (*Id.* at 2251, ¶¶ 44–49). She next argues the panel did not give preclusive effect to the magistrate judge's determinations that Doe did not engage in child abuse and that her accusers were not credible. (*Id.* at 2256, 2262–63, ¶¶ 84–85, 132). She next claims her due process rights were violated because her appeals were denied based on "[un]related case hearings" in violation of Regulation 2.03.05. (*Id.* at 2265, ¶ 147). And she attacks the process, because when her fourth appeal was finally granted, it was a panel of three DCFS social workers, who heard and ruled on it. (*Id.* at 2255, 2270, ¶¶ 83, 188). And the panel's decision conflicted with judicial resolution of the same question. (*Id.* at 2256, 2262-63, 2270, ¶¶ 83–85, 132, 188). Finally, she challenges her inability to further appeal the panel's determination that the alleged abuse, though not "substantiated," was still "indicated." (*Id.* at 2256, ¶¶ 85).

While these assertions might appear viable, as the County correctly notes, (R. 24-1, PageID 2782-83), violating state or county procedure does not implicate and cannot violate procedural due process rights because such an action violates state law, not the Fourteenth Amendment, *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 570 (6th Cir. 2011). Furthermore, the County is correct in that Doe does not allege a change in her parental rights and alleges only conditional or speculative harms to her employment. (*Id.* at 2777-82).

Therefore, the Court concludes Doe has alleged facts sufficient to support the pre-deprivation of a liberty interest against the County, but not post-deprivation claims as it pertains to the appeal

17

process. *See Williams* at 672 (citing *Kyser v. Summit Cnty. Children Serv.,* 175 Ohio St. 3d 392 (2024) for the proposition that post-deprivation remedies lie in appeals of agency orders); *see also*, *Bd. of Regents of State Colls. v. Roth*, *supra,* 408 U.S. at 570.

   6. ***Claims against DCFS***

While Doe initially also named DCFS as a defendant. (R. 23, PageID 2243), she "concedes" DCFS cannot be sued because it is not *sui juris*. (R. 33, PageID 2868). The Court agrees. DCFS, as a county agency, is not *sui juris* and, therefore, cannot be sued. *Loper v. Cuyahoga Cnty. Child. & Fam. Servs.*, No. 1:18cv1598, 2019 WL 1597552, at *2 (N.D. Ohio Apr. 15, 2019) (Nugent, J.) (compiling cases); *Rose v. Dep't of Child. & Fam. Servs.*, No. 1:19cv127, 2019 WL 2123067, at *2 (N.D. Ohio May 15, 2019) (Oliver, J.) (citing *Loper,* 2019 WL 1597552, at *2). As such, the Court dismisses DCFS with prejudice.

   7. ***Claims against Chris Ronayne***

Doe also now "concedes" that the claims against Cuyahoga County Executive Ronayne "are duplicative… only insofar as [they] mirror[] the claims against" the County. (R. 33, PageID 2868). But because Doe did not specify the capacity in which she was suing Ronayne (R. 23 at 2245), the Court must assume it is only in his official capacity. *See Palmer v. Abdalla*, No. 2:11cv503, 2011 WL 5075825 at *4 (S.D. Ohio Oct. 26, 2011) (citing *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1989) (*per curiam*)). *See also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("When a county official is sued in his official capacity, that is "equivalent [to] a suit against the county").

The Amended Complaint does not identify any claims against Ronayne that are not also brought against the County. (*See* R. 23, PageID 2260–76). Therefore, these redundant claims against the official must be dismissed. *Williams v. Cuyahoga Cnty., supra,* 771 F. Supp. 3d at 676 (quoting

*Ruffin v. Cuyahoga Cnty.* No. 1:16cv640, 2016 WL 4543144, at *2 (N.D. Ohio Aug. 31, 2016) (Gaughan, J.)). Consequently, the Court dismisses Ronayne with prejudice.

**Conclusion**

For the foregoing reasons, it is hereby ORDERED THAT:

1. Defendant Ohio Department of Job and Family Services' (ODJFS) Motion to Dismiss (R. 28), is **GRANTED,** and therefore, all claims against ODJFS are hereby **DISMISSED;**

2. Cuyahoga County's Motion to Dismiss (R. 24), **is GRANTED IN PART and DENIED IN PART.** Doe's substantive due process claims, First Amendment claims, post-determination procedural due process claims, and all claims related to the Ohio Administrative Code's definition of "indicated" are **DISMISSED**. The remaining procedural due process claims—only against Cuyahoga County regarding the Cuyahoga County Department of Children and Family Services' (DCFS) pre-determination Regulations—will be further adjudicated; and

3. Defendants Ronayne and DCFS are **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: September 29, 2025

19