**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JANE DOE, | ) | CASE NO. 1:22-CV-01677 |
| | ) | |
| Plaintiff | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| -vs- | ) | |
| | ) | |
| CUYAHOGA COUNTY – OFFICE | ) | **ORDER CERTIFYING CASE** |
| OF COUNTY EXECUTIVE, *et al.*, | ) | **FOR INTERLOCUTORY APPEAL** |
| | ) | |
| Defendants. | ) | |

## Procedural Background

Pending before the Court is a "Joint Motion for [Fed R. Civ. P.] 54(b) Certification." (R. 52). Plaintiff asks the Court to certify an interlocutory appeal of its September 29, 2025 Memorandum, Opinion, and Order, (R. 42), granting in part, the Motion to Dismiss of Defendants, Cuyahoga County ("County"), Cuyahoga County Department of Children and Family Services ("DCFS"), and Cuyahoga County - Office of County Executive Chris Ronayne ("Ronayne"), (R. 24), and granting the Motion to Dismiss of Defendant, Ohio Department of Job and Family Services ("ODJFS"). (R. 28). The County joins, seeking to appeal that portion of the Court's Order denying dismissal of Plaintiff's challenges to its pre-determination process.

On September 29, 2025, the Court, granting ODJFS's Motion to Dismiss, (R. 28), held the agency has immunity from suit under the Eleventh Amendment. (R. 42, PageID 2993-94). In addition, the Court partially granted the County's Motion, (R. 24), and dismissed the First Amendment claim, the Fourteenth Amendment substantive due process claim, and Plaintiff's post-deprivation procedural due process claim against the County. (*Id.* at 2997-3004).

While Plaintiff initially also named DCFS, (R. 23, PageID 2243), she acknowledged

1

DCFS cannot be sued because it is not *sui juris*. (R. 33, PageID 2868). The Court, accepting this concession as a voluntary dismissal, dismissed all claims against DCFS with prejudice. (R. 42, PageID 3004). Furthermore, Plaintiff conceded all claims against Ronayne "are duplicative… only insofar as [they] mirror[] the claims against" the County. (R. 33, PageID 2868). *See Palmer v. Abdalla*, No. 2:11-CV-503, 2011 WL 5075825, at *4 (S.D. Ohio Oct. 26, 2011) (citing *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1989) (per curiam)). So the Court also dismissed all claims against Ronayne with prejudice. (R. 42, PageID 3004-05).

These dismissals left one remaining claim for further adjudication, namely, a stigma-plus procedural pre-deprivation due process claim against the County. (R. 42 at 3003-04).

On October 29, 2025, Plaintiff, without district court certification, filed an appeal to the Sixth Circuit Court of Appeals, (R. 43), which the Circuit acknowledged on November 4, 2025. The Court held a status conference with Counsel on October 30, 2025 to discuss the interlocutory nature of the appeal. (R. 44). The County's Counsel expressed no opposition to certification, so Plaintiff's Counsel filed a Motion for a Certificate of Appealability. (R. 45). However, because Plaintiff voluntarily dismissed the appeal on December 22, 2025, the Court denied the Motion as moot. (R. 47). After a status conference, Plaintiff filed a new Motion for a Certificate of Appealability, (R. 49), an Amended Motion, (R. 50), and a Motion for Extension to Confer with Counsel (about the appeal), (R. 51). After discussions, the County agreed, with the understanding it too could seek an appeal, so the "supplemental" Motion was filed jointly.[1] (R. 52).

For the reasons that follow, the Court denies certification under Fed. R. Civ. P. 54(b) but

---

[1]     The Court issued an Order denying the Motion, (R. 49), as moot having granted the Amended Motion, (R. 50). The Court also granted the Motion to Confer, (R. 51), giving the parties until April 30, 2026 to file a supplement to the Amended Motion. (*See* 04/20/2026 NDO). Although the Joint Motion was filed on May 1, 2026, the Court accepts the untimely joint filing, (R. 52), as the "supplement."

certifies this case for an interlocutory appeal under 28 U.S.C. § 1292(b).

**Underlying Factual Allegations**

Plaintiff, using the alias of Jane Doe, filed a Second Amended Complaint under 42 U.S.C. § 1983, seeking declaratory, injunctive, and monetary relief for alleged constitutional deprivations. (R. 22; R. 23). These claims stem from the application of DCFS's Policy (Regulation 2.03.05), which prevents a party from appealing a DCFS determination of "substantiated" child abuse allegations when related court actions or legal proceedings concerning alleged abuse are pending. (R. 23, PageID 2244). Because of DCFS's finding, Plaintiff's name was added to the Ohio Abused and Neglected Child Registry ("Registry"). Plaintiff alleges DCFS's Policy, and the resulting process, negatively impact freedom of association under the First Amendment, are overbroad (Count I), and have deprived Plaintiff of the constitutionally protected right to seek employment (Count II). She further asserts ODJFS's definition of "Indicated" abuse, as used in Ohio Admin. Code § 5180:2-1-01(B)(161),[2] is void for vagueness, overbroad, and unconstitutional (Count III); thereby violating Plaintiff's due process rights (Count IV); and that DCFS's appeal process violates the Due Process Clause and the Ohio Administrative Code (Count V). She seeks the Court to declare both the ODJFS Regulation and DCFS's Policy are unconstitutional (Count VI). (R. 23, PageID 2260-76).

These claims stem from an allegation of child abuse made by the father of Plaintiff's (then) minor children. DCFS began an investigation on May 17, 2022. (R. 23, PageID 2246). The father, who was in a custody dispute with Plaintiff, filed for a Civil Protection Order

---

2       The Amended Complaint refers to Ohio Admin. Code §§ 5101:2-1-01 and 5101:2-33-20, but those sections have since been renumbered. Chapter 5101:2 pertains to ODJFS's Division of Social Services, while Chapter 5180 now houses the regulations pertaining to the Department of Children and Youth. *See* Ohio Admin. Code §§ 5180:2-1-01, 5180:2-33-20.

("CPO") on May 18, 2022. (*Id.*). DCFS continued its investigation, and the assigned caseworker accepted the minor's assertions that Plaintiff choked her, pulled her hair, knocked her to the ground, and dragged her across the floor, despite Plaintiff's assertion that video footage of the events exonerated her. (*Id.*). DCFS consequently issued a finding that Plaintiff used excessive discipline resulting in a finding of "Substantiated" abuse on June 13, 2022. (*Id.* at 2246, 2252).[3]

Plaintiff asserts that during the CPO hearing, the caseworker viewed the video for the first time and testified what she saw on tape did not constitute "excessive discipline." (*Id*. at 2246-47). And on July 8, 2022, the CPO hearing officer issued an opinion that the accusers were not credible and the video did not depict "domestic violence" as defined in Ohio Rev. Code §§ 3113.31, 2919.22 or 2151.031, which are statutes under which child abuse charges are prosecuted. (*Id.* at 2247-48). Despite this ruling, DCFS did not change its finding, but it also did not recommend or file child abuse charges with the Cuyahoga County Juvenile Court. (*Id.* at 2250). Instead, the agency recommended counseling for Plaintiff. (*Id.*).

DCFS's findings are required to be reported on the Registry. (*Id.*). The Registry contains two classifications: "Substantiated" and "Indicated" abuse. (*Id.* at 2253). Consequently, Plaintiff's name was placed on the Registry, initially under the former category. (*Id.* at 2252-53). This information can be accessed by any child protection services worker throughout the nation. So, the children's father attempted to have Plaintiff disciplined by both her employer and her

---

3       There are six possible case dispositions: "Substantiated," "Indicated," and "Unsubstantiated" being the three merit-based findings. Ohio Admin. Code § 5180:2-1-01(B)(46). "Substantiated" means "an admission…[or] adjudication of child abuse or neglect; or other forms of confirmation deemed valid by the PCSA." § 5180:2-1-01(B)(316). "Indicated" means "…circumstantial or other isolated indicators of child abuse or neglect lacking confirmation; or a determination by the caseworker that the child may have been abused or neglected based upon completion of an assessment/investigation." § 5180:2-1-01(b)(161).

licensing board, in what Plaintiff asserts was an attempt to harm her livelihood.[4] (*Id.* at 2252).

Plaintiff alleges the process – ranging from the complainant's anonymity and refusal to provide the status of or grounds for the investigation to a non-neutral hearing officer and lack of judicial review – violates due process. (*Id.* at 2263-65). Plaintiff further challenges the investigation by asserting the Ohio Revised Code provides such investigations "shall be made in cooperation with [a] law enforcement agency," which was not done. (*Id.* at 2256-57) (citing Ohio Rev. Code §§ 2151.4220 – 2151.4234).[5]

Plaintiff further claims she was harmed by the County's (in)action, arguing had she been criminally charged, she would have had opportunity to refute the allegations in the Juvenile Court and would have had a guaranteed right of appeal if that court ruled against her. (*Id.* at 2250-51). She further challenges the DCFS Policy itself, asserting a finding of "Not True" by the trial court would have no preclusive effect as long as a legal proceeding is pending. (*Id.* at 2251).

Plaintiff also challenges the appeals process because DCFS rejected several of her appeals as being premature. (*Id.*). She was eventually afforded an appeals hearing on November 22, 2022, and the three-member panel ruled that abuse was not "Substantiated" but was

---

4       While there is minimal evidence of Plaintiff's harm in the record, she indicates her employer instituted a policy, requiring supervisors to remove employees with a record of abuse/neglect from direct patient care, with the possibility of unpaid administrative leave, suspension, or worse. (R. 23 at 2259). Also, she alleges she intended to seek employment in Tennessee, and that state requires licensure applicants to disclose listings on any abuse registry. (*Id.*).

5       While Ohio law does require a public children services agency ("PCSA") to conduct investigations "in cooperation with" law enforcement, *see* Ohio Rev. Code § 2151.421(G)(1), the statutory provisions Plaintiff cites simply require preparation of a memorandum of understanding ("MOU") to be executed by county officials and law enforcement. The purpose of the MOU is to establish normal operating procedures, streamline investigations, and prevent duplication of investigative efforts. *See* Ohio Rev. Code §§ 2151.4220, 2151.4221.

nonetheless, "Indicated." (*Id.* at 2256). But no further appeal is permitted to a court or elsewhere. (*Id.*). Thus she claims that from the date of the initial finding of "Substantiated" abuse through the date DCFS granted her an appeals hearing, she was denied the ability to challenge the finding, despite evidence in her favor and a favorable finding in the CPO proceeding. She challenges the process as contravening the mandate of ODJFS's Regulation, which she claims, permits local agencies to create appeal policies. (*Id.* at 2252, 2255).

Finally, Plaintiff challenges the State's definition of "Indicated" abuse as impermissibly vague. She argues this administrative standard falls far below any court-imposed legal standards for child abuse cases, which require "clear and convincing evidence" and a finding "beyond a reasonable doubt." (*Id.* at 2258). And this definition, she argues, deprives persons of any meaningful investigatory process. (*Id.* at 2267-68, 2270-71). Therefore, Plaintiff alleges, the DCFS Policy is unconstitutionally overbroad, and the process divested her of the right to be heard, thereby depriving her of constitutionally protected rights to raise children, freely associate, and seek employment without governmental interference. (*Id.* at 2260-64, 2271-724).

## Law and Analysis

### A.  Federal Appeals Generally

As a threshold matter, interlocutory appeals are disfavored. *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368 (1981); *Sinclair v. Schriber,* 834 F.2d 103, 105 (6th Cir. 1987). Appeals from district courts are generally restricted to final judgments. *Sinclair,* 834 F.2d at 104. *See also* 28 U.S.C. § 1291. Exceptions to this rule exist, but typically require the appellant to prove "extraordinary circumstances" warrant appeal. *General Acquisition, Inc. v. GenCorp,* 23 F.3d 1022, 1026 (6th Cir. 1994). *See also Novacor Chemicals Inc. v. GAF Corp.*, 164 F.R.D. 640, 643-44 (E.D. Tenn. 1996) (citing *Firestone,* 449 U.S. at 374).

6

**B.  Directing Entry of a Final Judgment under Fed. R. Civ. P. 54(b)**

The parties seek certification under Fed. R. Civ. P. R. 54(b) "Judgment on Multiple Claims or Involving Multiple Parties." This Rule provides:

> When an action presents more than one claim for relief whether as a claim, counterclaim, crossclaim, or third-party claim - or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Rule 54(b) was intended "to strike a balance between the undesirability of more than one appeal in a single action and the need for making review available in multiple-party or multiple-claim situations at a time that best serves the needs of the litigants." Wright, Miller & Kane, *Fed. Prac. and Pro. Civ. 2d* § 2654 (1983). The Sixth Circuit has instructed that district courts are "vested with considerable discretion to 'release' certain orders for immediate appeal under Rule 54(b)." *Gen. Acquisition.,* 23 F.3d at 1030 (citing *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 437 (1956); *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 10 (1980)). However, that "discretion is not unbounded." *Id.* (citing *Corrosioneering, Inc. v. Thyssen Env't Sys., Inc.,* 807 F.2d 1279, 1282 (6th Cir. 1986)).

In striking that balance, district courts must establish requisite parameters and weigh certain factors before certifying appeal of a case prior to final judgment. *Day v. NLO, Inc.,* 3 F.3d 153, 154-55 (6th Cir. 1993). Critical to this case, under Rule 54(b), a district court may direct entry of final judgment as to one or more claims, but fewer than all. *Riggs v. Wright,* No. 3:22-CV-456, 2026 WL 373088, at *6 (W.D. Ky. Feb. 10, 2026); *Planned Parenthood Southwest Ohio Reg. v. DeWine,* No. 1:04-CV-493, 2011 WL 4063999, at *2 (S.D. Ohio Sept. 13, 2011).

Here, the parties conferred, and the County agreed to certification, but only with the understanding it could also appeal that portion of the Court's Order sustaining the pre-determination claim.[6] (R. 52, PageID 3045). If permitted, the Court would – in essence – be certifying the entire case for an interlocutory appeal, which is not allowed under Rule 54(b). *Gen. Acquisition, Inc.,* 23 F.3d at 1026-27 (citing *Curtiss-Wright, Inc.,* 446 U.S. at 7)).

Additionally, where the case allegations "concern a single aggregate of operative facts," 54(b) certification is improper, "even if the party has raised different theories of relief." *Gen. Acquisition, Inc.,* 23 F.3d at 1022; *see also Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.,* No. 2:07-CV-116, 2014 WL 12719240 (S.D. Ohio Aug. 18, 2014) (considering multiple claims as one based on review of the relief sought, which amounted to a single injury). This applies even where the "facts underlying the respective causes of action are not perfectly aligned." *Sherrod v. Wal-Mart Stores, Inc.,* 103 F.4th 410, 415-16 (6th Cir. 2024).

The *Sherrod* case provides a clear example of this principle. The district court dismissed a wrongful death count, leaving survivorship claims for resolution, and certified the dismissal under Fed. R. Civ. P. 54(b). Despite the plaintiffs' claims that survivorship claims were tied to the decedent's pain and suffering, while wrongful death claims attached to surviving family members, the Sixth Circuit found both causes of action stemmed from Wal-Mart's alleged negligence and premises tort liability. *Id.* at 414-15. Thus held the court, where the causes of action arise "out of the same aggregate of operative facts," certification is improper. *Id.*

As the *Sherrod* Court noted, "[a]ssessing whether the dismissed count is different from

---

6       Specifically, the County seeks to appeal the Court's Order holding: "The remaining procedural due process claims - only against Cuyahoga County regarding the [DCFS's] pre-determination Regulations - will be further adjudicated[.]" (*Id.*) (citing R. 42, PageID 3005).

those remaining before the district court is often 'trickier than it sounds.'" *Id.* at 413-14 (citing *In re Fifth Third Early Access Cash Advance Litig.,* 925 F.3d 265, 273 (6th Cir. 2019)). But here, despite the multiple causes of actions, all claims arise from one incident – a report of alleged child abuse – and the resulting investigation and actions taken as a result. The dismissed claims are not sufficiently distinct from the remaining claim. *See Lowrey v. Fed. Express Corp.,* 426 F.3d 817, 821 (6th Cir. 2005) (holding Rule 54(b) certification on dismissed Title VII claim improper where remaining claim (breach of contract) arose from same retaliation allegation) (citing *Daleure v. Commonwealth of Kentucky,* 269 F.3d 540, 543 (6th Cir. 2001) (finding court lacked jurisdiction to hear appeal because "the plaintiff's various arguments are not separable claims, but rather different theories of damages for the same underlying injury")).

Therefore, the Court cannot certify the desired appeal under the Rules of Civil Procedure.

### C.  Certification of an Interlocutory Appeal under 28 U.S.C. § 1292(b)

Having determined certification under Rule 54(b) is not appropriate, first because the Court would be certifying all claims based on the Joint Motion, and second because the claims derive from a common set of facts, the Court turns to its powers under 28 U.S.C. § 1292(b). This provision confers authority upon district courts to certify issues for appeal while a matter is pending:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order....That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order….

28 U.S.C. § 1292(b). Under this statute, federal "district courts [are] circumscribed authority to certify for immediate appeal interlocutory orders deemed pivotal and debatable." *Swint v.*

*Chambers Cty. Comm.*, 514 U.S. 35, 46 (1995).

The difference, as described by one court, is that "Rule 54(b) applies to adjudications that would be final under 28 U.S.C. § 1291 if they occurred in a single-claim two-party case[; whereas,] 1292(b)…applies only to orders that would be considered interlocutory, *i.e.* interim in an action with the same limited dimensions." *Novacor Chem., Inc. v. GAF Corp.,* 164 F.R.D. 640, 644 (E.D. Tenn. 1996)). Rule 54(b) requires the Court to expressly direct entry of final judgment. *Id.* at 645. Whereas "a decision or order which 'does not finally determine a cause of action but only decides some intervening matter…, which requires further steps to …enable the court to adjudicate the cause on the merits' is considered interlocutory." *Id.* (citations omitted).

Furthermore, in § 1292(b) appeals, federal appellate courts are permitted to exercise jurisdiction over the entire order, not just the particular issue certified by the district court. *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 203-05 (1996) ("As the text of § 1292(b) indicates, appellate jurisdiction applies to the order certified to the court of appeals, and is not tied to the particular question formulated by the district court"); *see also Swint,* 514 U.S. at 50 ("[W]e have not universally required courts of appeals to confine review to the precise decision independently subject to appeal."). The rationale for allowing review of "any issue fairly included within the certified order," is that "it is the *order* that is appealable, and not the controlling question identified by the district court." *Yamaha Motor Corp., USA,* 516 U.S. at 205 (citing *United States v. Stanley,* 483 U.S. 669, 677, (1987)). *See also Foster v. Walsh*, 864 F.2d 416, 418 (6th Cir. 1988) (per curiam) (considering a § 1983 claim against a municipal court a pendent appeal to the court's review of a court officer's absolute immunity defense); *Carlson v. Conklin,* 813 F.2d 769, 770-71 (6th Cir. 1987) (accepting jurisdiction over interlocutory order implicating immunity, but deciding case on grounds of failure to state claim).

The Sixth Circuit has determined certain requirements must be met to certify a § 1292(b) interlocutory appeal: "(1) the question involved is one of law; (2) the question is controlling; (3) there is substantial ground for difference of opinion respecting the correctness of the district court's decision; and (4) immediate appeal would materially advance the ultimate termination of the litigation." *Vitols v. Citizens Banking Co.,* 984 F.2d 168, 170 (6th Cir. 1993); *see also Adams v. Bradshaw,* No. 1:05-CV-1886, 2010 WL 816532, at *2 (N.D. Ohio Mar. 4, 2010) (Katz, J.) (citing *Klinghoffer v. Achille Lauro,* 931 F.2d 21, 24 (2d Cir. 1990)). Furthermore, "certification [must] not slow down th[e] litigation; it must materially advance it." *J.M. Smucker Co. v. ACE Am. Ins. Co.,* No. 5:23-CV-607, 2025 WL 50221, at *1 (N.D. Ohio Jan. 8, 2025) (Adams, J.) (citing *Isra Fruit, Ltd. v. Agrexco Agric. Export Co.*, *Ltd.*, 804 F.2d 24, 26 (2d Cir. 1986)).

Examining this case under those factors, first, the matters for appeal are questions of law. They are: whether the state administrative regulation is constitutional; whether DCFS's Policy is constitutional; whether – accepting as true all facts asserted – Plaintiff suffered due process violations both during the investigation and after the finding through the appeals process; and whether ODJFS has immunity from suit.

Second, "[t]he Sixth Circuit has [] set a low bar for a determination that a question of law is 'controlling' in the context of a motion for certification under § 1292(b)." *Newsome v. Young Supply Co.,* 873 F. Supp. 2d 872, 875-76 (E.D. Mich. 2012). "All that must be shown…is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *Id*. (citing *Eagan v. CSX Transportation, Inc.,* 294 F.Supp.2d 911, 915 (E.D. Mich. 2003); *In re Baker & Getty Fin. Servs., Inc.,* 954 F.2d 1169, 1172 n. 8 (6th Cir. 1992)). Ultimately, Plaintiff's case rests on whether she was legally afforded sufficient opportunity to challenge the finding leading to placement of her name on the Registry and whether the County's

11

Policy violated her First Amendment rights. Guidance from the Circuit will materially affect the litigation as the parties will benefit from disposition of these legal issues while conserving resources and reducing the burden of piecemeal litigation. Thus the Court finds a controlling question of law exists.

Third, substantial grounds for a difference of opinion on the issues raised by an interlocutory order exists "when: (1) the question is difficult, novel, and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question." *Newsome v. Young Supply Co.,* 873 F. Supp. 2d 872, 876-77 (E.D. Mich. 2012) (citing *City of Dearborn v. Comcast of Michigan III, Inc.,* No. 08-10156, 2008 WL 5084203, at *3, (E.D. Mich. 2008)).

In support, arguments pertaining to the constitutionality of abuse/neglect investigations surface periodically in this District. *See e.g. Williams v. Cuyahoga Cnty.,* 776 F. Supp. 3d 653, 671 (N.D. Ohio 2025) (Calabrese, J.), *appeal dismissed sub nom., Williams v. Cuyahoga Cnty.,* No. 25-3346, 2025 WL 3130858 (6th Cir. Sept. 11, 2025) (certifying claims of Williams, all of which were dismissed on appeal, while the claims of co-plaintiff, Thomas, remained). Additionally, Ohio state courts routinely address legal issues pertaining to abuse investigations.

Instructive on this point, in *M.F. v. Cuyahoga Cnty. Div. of Child. & Fam. Servs.*, 2024-Ohio-3306, ¶ 2 (Ohio Ct. App. Aug. 29, 2024), *appeal not allowed sub nom.,* 178 Ohio St.3d 1465 (2025), the plaintiff sought judicial review – pursuant to Ohio Rev. Code § 2506.01 – of DCFS's finding she committed "substantiated" neglect. DCFS notified the plaintiff of its finding as required under the Ohio Administrative Code, and she appealed. The trial court denied the County's motion to dismiss, but eventually affirmed DCFS's findings. *Id.* at ¶ 5. The Eighth

District Court of Appeals found as "confusing" the trial court's determination that, on the one hand, the plaintiff "was denied employment based upon the substantiated finding," but "[had] not yet been deprived of a protected liberty interest." *Id.* at ¶¶ 20-21. Regardless, the appellate court ruled the plaintiff had no right of appeal and therefore, all findings of the trial court were vacated as "void ab initio." *Id.* at ¶ 26 (citing *Kyser v. Summit Cty. Child. Servs.,* 175 Ohio St.3d 392, 396 (2024) ("[S]ubstantiated" abuse finding "did not itself conclusively… determine a "person's rights, duties, privileges, benefits, or legal relationships," as required under § 2506.01.)).

While the Ohio Supreme Court declined to exercise jurisdiction because it was "unclear whether there [was] a developed record to support [the appellant's] argument," this Court relies on Judge Brunner's sole concurrence. *See M.F. v. Cuyahoga Cty. Div. of Child. & Fam. Servs.,* 178 Ohio St.3d 1465 (2025). Recognizing the plaintiff's argument that DCFS's findings "will prohibit [her] from employment in her chosen field," she wrote to "express concern with the appellate court's blanket misapplication of *Kyser*. As she stated, "[i]f true, this is a serious consequence directly resulting from the agency's disposition, one from which [the appellant] has no automatic right to appeal outside the agency." *Id.* Collectively, these opinions indicate the issue is a matter of public or great general interest, and this Court finds Plaintiff's claims – at least pertaining to employment – raise substantial grounds for a difference of opinion.

Delving further, the Sixth Circuit has previously upheld dismissal of a § 1983 claim alleging violations of an asserted constitutionally protected liberty interest in familial association. The Circuit found no protected right to be free from governmental child abuse investigations, but held the agency must afford due process before terminating parental rights/custody. *Kottmyer v. Maas*, 436 F.3d 684, 691 (6th Cir. 2006) (citing *Watterson v. Page,* 987 F.2d 1 (1st Cir.1993); *Doe v. Heck,* 327 F.3d 492, 520 (7th Cir.2003)); *see also, Palmer v. Adams,* 517 F. App'x 308,

310 (6th Cir. 2013) ("Assuming Palmer had a clearly established constitutional right to familial association [], the mere institution and continuation of an investigation into abuse allegations does not infringe on that right.").

Similarly, the Circuit has addressed procedural and due process claims as they relate to alleged fabricated evidence. *Teets v. Cuyahoga Cnty.,* 460 F. App'x 498, 502-03 (6th Cir. 2012) (caseworker's "intentional misrepresentations," which led to custody proceedings did not violate parent's substantive due process rights "because the social worker has no independent ability to institute the alleged deprivation") (citing *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.,* 640 F.3d 716, 729 (6th Cir. 2011) (social worker did not violate father's due process rights as she had no duty to inform father about developments in the court proceedings against the child's mother and was not responsible for defects in the court's notice to him)).

And there is certainly a plethora of case law pertaining to the Fourth Amendment and search/seizure of alleged abused children. *See, e.g., Schulkers v. Kammer,* 955 F.3d 520 (6th Cir. 2020). As well as challenges based on an inadequate or lack of investigation. *E.g. Langdon v. Skelding,* 524 F. App'x 172, 173 (6th Cir. 2013). But here, the claims attack governmental rules and policies pertaining to the *investigative process* itself. So the case presents a novel question in a natural progression of precedent emanating from child abuse investigations.

As to the fourth and final factor, a finding on appeal, whether affirmance or remand, would materially advance the litigation. Plaintiff argues by dismissing ODJFS entirely and all claims related to Ohio Admin. Code § 5101:2:1-01, there is "no ability for Plaintiff to litigate Count[s] One, Three and Five (First Amendment and due process violations)." (R. 52, PageID 3043). She argues, by leaving pre-determination procedures as the only remaining claim to be litigated, she cannot contest the constitutionality of the State's regulation and the "Indicated"

standard. (*Id.*). Consequently, she contends dismissal of ODJFS – which maintains the Registry – leaves Plaintiff without recourse, *i.e.*, removal of her name, should she prevail. (*Id.* at 3044).

A ruling by the Court of Appeals will potentially decide the remaining litigation. For example, if the Circuit rules the ODJFS regulation is unconstitutional, Plaintiff will be afforded judgment on her requested relief. (*Id.* at 3043-44). As every party to litigation believes its position is correct, direction from the Circuit – either way – could certainly propel the litigation, whether by dismissal of the case, settlement, or trial. Moreover, "[i]nterlocutory appeal is most appropriate early in the proceedings. In contrast, the role of interlocutory appeal is diminished when a case is nearing trial and large expenditures have already been made." *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 876 (E.D. Mich. 2012) (citations omitted). Here, the bulk of the time has been spent on pre-trial issues and motion practice, so the timeframe for an interlocutory appeal is appropriate. Under these circumstances, an appeal would promote judicial economy by settling contested questions before occupying more of the Court's and parties' time and attention.

Therefore, the Court certifies the case under § 1292(b) for review of the Court's Memorandum Opinion and Order (R. 42) and the following question: Whether the State's administrative regulation pertaining to child abuse, in conjunction with the County's Policy pertaining to investigation, disposition, and appeal of alleged child abuse and neglect, violate an accused's First Amendment rights, substantive due process, and/or procedural due process rights?

### Conclusion

The Court finds that certification of an interlocutory appeal to consider the pertinent legal issues presented in this matter will not result in piecemeal litigation, but will promote judicial economy, preserve the parties' resources, and foster a more expeditious resolution. Accordingly,

for the foregoing reasons, the Court hereby:

(1) **Denies** the Motion for Certification under Fed. R. Civ. P. 54(b) (R. 50; R. 52);

(2) **Certifies** this case for an interlocutory appeal of the Court's September 29, 2025 Memorandum, Opinion, and Order (R. 42) under 28 U.S.C. § 1292(b); and

(3) **Stays** all proceedings until the Sixth Circuit Court of Appeals rules on the matter.

IT IS SO ORDERED.

Date: June 22, 2026

s/ *David A. Ruiz*

David A. Ruiz
United States District Judge